IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| TRAVELERS CASUALTY & SURETY COMPANY | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Case No.: BPG-21-1992 |
| | * |
| EAST COAST WELDING & CONSTRUCTION CO., INC., et al. | * |
| | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF Nos. 28, 35). Currently pending is plaintiff's Motion for Summary Judgment ("plaintiff's Motion") (ECF No. 48), defendants' Opposition to Plaintiff's Motion for Summary Judgment ("defendant's Response") (ECF No. 51), and plaintiff's Reply to Opposition of Defendants to Plaintiff's Motion for Summary Judgment ("plaintiff's Reply") (ECF No. 53). No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed herein, plaintiff's Motion (ECF No. 48) is granted as to Defendants Christopher Brown and Anita Brown.

### I.     BACKGROUND

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). On March 1, 2020, plaintiff Travelers Casualty & Surety Company ("Travelers"), acting as surety, provided defendant East Coast Welding & Construction Co., Inc. ("East Coast"), as principal, and Local Lodge 45, International Brotherhood of Boilermakers, Iron Ship Builders,

1

Blacksmiths, Forgers and Helpers ("Local 45"), as obligee, with two Field Dues and Fringe Benefit Bonds (the "Bonds") in the amount of $75,000 each. (ECF Nos. 48-1 ¶ 1-2, 48-4, 48-5). Retention of the Bonds was a mandatory condition of East Coast's collective bargaining agreement with Local 45, contained in the Ohio Valley Articles of Agreement. (ECF Nos. 48-4, 48-5). In partial consideration of the provision of the two Bonds, Travelers, and defendants Christopher Brown, and Anita Brown, as "Individual Indemnitors," and East Coast, as "Indemnitor Corporation," executed a General Contract of Indemnity ("Indemnity Agreement"), dated December 18, 2020. (ECF No. 48-1 at ¶ 3). Under the terms of the Indemnity Agreement, defendants agreed to be jointly and severally liable, and to "exonerate, indemnify and save [plaintiff] harmless from and against all Loss." (Id. at ¶ 4). The Indemnity Agreement defines "Loss" as:

> [A]ll loss and expense of any kind or nature, including attorneys' . . . fees, which [plaintiff] incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of [plaintiff]: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond . . . (e) enforcing by litigation or otherwise any of the provisions of this Agreement[.]

(ECF Nos. 48-1 ¶ 4, 48-6).

On October 21, 2020 and March 8, 2021, Local 45 and Boilermaker-Blacksmith National Pension Trust, Boilermakers National Health & Welfare Fund, Boilermakers National Annuity Trust, Boilermakers National Apprenticeship Program, and the Mobilization, Optimization, Stabilization, and Training program (collectively "Boilermaker-Blacksmith"), made claims against the Bonds. (ECF Nos. 48-7, 48-8) Local 45 submitted an initial claim of $125,839.34 (ECF No. 48-7 at 2) and a revised claim of $104,332.63 (ECF 48-10 at 3). Boilermaker-Blacksmith submitted an estimated claim of $295,489.07. (ECF No. 48-8 at 2). Local 45 and Boilermaker-Blacksmith claimed that "East Coast had failed to remit or retain all or portions of union dues and various contributions secured by the Bonds." (ECF Nos. 48-1 ¶ 5, 48-7, 48-8).

After receiving these requests, plaintiff contacted Mr. and Mrs. Brown regarding any "response to those claims, including a statement of any amounts currently due, and any defenses, set-off or mitigation that may be appropriate and documentary support[.]" (ECF No. 48-1 ⁋ 6).  Plaintiff attaches to its Motion a letter to Mr. Brown, dated March 17, 2021, which states that "[d]uring a phone conversation" the same day, Mr. Brown acknowledged "that there is a total amount due and owing to [Local 45 and Boilermaker-Blacksmith] from [East Coast] in the approximate amount of $180,000" and identified no defenses or set-offs to that amount.  (ECF No. 48-10 at 3).  Further, Mr. Brown identified no basis upon which to conclude that Boilermaker-Blacksmith's claim was not covered by the Bond, but instead acknowledged that the outstanding amount owed to both Local 45 and Boilermaker-Blacksmith was in excess of the $150,000 total secured by plaintiff.  (Id.)

On April 26 and April 28, 2021, plaintiff made two payments of $75,000: the first to Local 45, and the second, at Local 45's direction, to Boilermaker-Blacksmith.  (ECF Nos. 48-1 ⁋ 7, 48-11, 48-12).  Plaintiff then began the process of attempting to recover its losses from defendants, including by sending two letters to Mr. and Mrs. Brown on May 4, 2021, demanding repayment for the discharged Bonds.  (ECF Nos. 48-1 ⁋ 8, 48-15, 48-16).  Plaintiff alleges that defendants were unresponsive to plaintiff's request for indemnification.  (ECF No. 48-1 ⁋ 9).  Plaintiff filed a single-count complaint for breach of contract against defendants on August 6, 2021.  (ECF Nos. 1 ⁋⁋ 5-14, 48-1 ⁋ 9).  Defendants raised several affirmative defenses in their answer, most of which they have since abandoned.  (ECF No. 15 ⁋ 15).  Plaintiff now moves for summary judgment against defendants.  (ECF No. 48).  Defendants respond that plaintiff is not entitled to indemnification because plaintiff failed to strictly comply with the terms of the Indemnity Agreement.  (ECF No. 51 ⁋ 6).

## II.     EAST COAST'S SUGGESTION OF BANKRUPTCY

As a threshold matter, the court must address whether, as a result of defendant East Coast's initiation of Chapter 11 bankruptcy proceedings, the case must be stayed in its entirety or only as to East Coast.  If the automatic stay applies only to East Coast, the court may proceed to consider plaintiff's Motion with respect to Mr. and Mrs. Brown, the Individual Indemnitors.  If the stay is to be extended to all defendants, the court may not consider plaintiff's Motion, but should instead halt the proceedings pending the outcome of East Coast's Chapter 11 bankruptcy case.  For the reasons stated below, the court concludes that this case should not be stayed as to defendants Mr. and Mrs. Brown.

On September 19, 2022, defendant East Coast filed a Suggestion of Bankruptcy in which East Coast stated that "this action has been stayed by the operation of 11 U.S.C. § 362."  (ECF No. 54).  In an Order dated October 4, 2022, the court instructed the parties to meet and file a joint letter containing their respective positions with regard to whether East Coast's Suggestion of Bankruptcy operated to automatically stay the proceedings against the remaining defendants, Mr. and Mrs. Brown.  (ECF No. 55).  On October 19, 2022, the parties filed their joint response.  (ECF No. 56).  Plaintiff contends that a stay created by initiation of Chapter 11 bankruptcy proceedings generally extends only to the bankrupt party and that Mr. and Mrs. Brown are independently liable for breach of contract, such that the court can proceed as to these defendants notwithstanding the automatic stay applicable to East Coast.  (Id. at 1-3).  Defendants argue that the claims against East Coast and Mr. and Mrs. Brown are so intertwined as to be inextricably linked, such that the case should be stayed.  (Id. at 3-4).

Section 362(a)(1) "imposes an automatic stay of any proceeding 'commenced or [that] could have commenced against the debtor' at the time of the filing of the Chapter 11 proceedings."

A.H. Robbins Co., Inc. v. Piccinin, 788 F.2d 994, 998 (4th Cir. 1986) (quoting 11 U.S.C. § 362(a)(1)). "Subsection (a)(1) is generally said to be available only to the debtor, not third party defendants or co-defendants." Id. at 999.  There are circumstances, however, under which proceedings may be stayed against non-bankrupt co-defendants.  Those are "unusual circumstances," involving "[s]omething more than the mere fact that one of the parties to the lawsuit filed a Chapter 11 bankruptcy[.]" Id.  For example, where non-bankrupt co-defendants are entitled to "absolute indemnity by the debtor on account of any judgment that might result against them in the case," the case should be stayed. Id. (citing In Re Metal Center, 31 B.R. 458 (D. Conn. 1983) (holding that case must be stayed against co-defendants who were entitled to indemnification under defendant corporation's corporate charter)).  Courts have also extended the automatic stay to non-bankrupt co-defendants where the third-party defendant was not independently liable, or where "a debtor and nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law." Id.  See In Re Northstar Contracting Corp., 125 B.R. 368, 370 (S.D.N.Y. 1991) (holding that an automatic stay should be extended to non-bankrupt defendants "where the debtor and the non-bankrupt party can be considered one entity or as having a unitary interest," and where such action will have a "significant impact on the bankrupt.").  Ultimately, any action "against those whose interest are so intimately intertwined with those of the debtor that the latter may be said to be the real party in interest" or which would significantly harm the debtor's reorganization efforts is automatically stayed by operation of § 362(a)(1). A.H. Robbins Co., Inc., 788 F.2d at 999; see In re Northstar Contracting Corp., 125 B.R. at 371.

Here, the automatic stay as to East Coast does not prevent the continuation of the proceedings against the non-bankrupt co-defendants, Mr. and Mrs. Brown.  Defendants argue that

"any adjudication as to [Mr.] and [Mrs.] Brown would be duplicitous [sic] of [plaintiff's] claim against East Coast" because "the case at issue is so intertwined." (ECF No. 56 at 3). Defendants further contend that because there is no "independent" cause of action against Mr. and Mrs. Brown, the claims against Mr. and Mrs. Brown are "unextractable [sic] and intertwined" with the claim against East Coast. (Id.) That is not the case. Plaintiff's breach of contract claims against Mr. and Mrs. Brown are independent causes of action as to each defendant. Moreover, as indemnitors on the contract, Mr. and Mrs. Brown are jointly and severally liable to plaintiff. (ECF No. 48-6). Plaintiff is correct in stating that "as joint and several contractual indemnitors, [Mr. and Mrs. Brown] owe[ plaintiff] a separate obligation to reimburse it fully for the loss." (Id. at 2). Accordingly, the automatic stay imposed by operation of § 362 does not extend to defendants Mr. and Mrs. Brown and the Court may consider plaintiff's Motion with respect to only these defendants.[1]

### III.  STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is properly considered "material" only if it might affect the outcome of the case under the governing law. Id.

---

[1] The court notes that defendant East Coast filed a Suggestion of Bankruptcy in another proceeding in this court, Delval Equipment Corp., Inc. v. East Coast Welding & Construction Co., Inc., No. ELH-21-1244 (Sept. 19, 2022, D. Md.). In that case, Delval Equipment Corp., Inc. ("Delval") brought suit alleging, among other things, breach of contract, intentional misrepresentation, negligent misrepresentation, unjust enrichment, and quantum meruit, as a result of East Coast's failure to pay for equipment supplied by Delval. East Coast, a subcontractor on the projects, is only one of a number of defendants, including prime contractors NS & Associates, LLC and QCM; another subcontractor, The Fields Group, LLC; East Coast's surety, Pennsylvania National Mutual Casualty Insurance Company; and Christopher Brown, the owner of East Coast. At the heart of the case is whether plaintiff can recover equipment costs unpaid by East Coast. A determination of East Coast's liability is, therefore, essential to the resolution of the case. On October 4, 2022, Judge Hollander ordered a stay of the case.

The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party but considers whether a fair-minded factfinder could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. Celotex, 477 U.S. at 324. A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment. Anderson, 477 U.S. at 252. Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact. Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001). Summary judgment should be denied only where a court concludes that a reasonable factfinder could find in favor of the non-moving party. Anderson, 477 U.S. at 252.

## IV.     DISCUSSION

Plaintiff moves for summary judgment, arguing that as a result of defendants'[2] breach of the Indemnity Agreement, plaintiff is entitled to recover $150,000 in bond loss payments and $18,224.50 in attorneys' fees and costs. (ECF No. 48-1 at 2). "A surety bond is a three-party agreement between a principal obligor, an obligee, and a surety. . . . In a payment bond, the surety guarantees the principal's duty to the obligee to pay" agreed upon costs. Atl. Contracting & Material Co. v. Ulico Cas. Co., 844 A.2d 460, 468 (Md. 2004). An indemnitor (i.e., the Individual Indemnitors and East Coast) is liable to a surety (i.e., plaintiff), "if the [indemnitor] fails to indemnify the surety after the surety incurs a loss on a bond." Developers Sur. & Indem. Co. v. Belcher, No. SAG-16-1124, 2017 WL 896861 at *4 (D. Md. Mar. 7, 2017) (citing Westfield Ins. Co. v. Site Maint., Inc., No. PWG-12-3145, 2013 WL 5964505, at *3 (D. Md 2013)). Moreover, if an express indemnification contract exists, "the terms govern the rights and liabilities of the parties and the surety is 'entitled to stand upon the letter of his contract.'" Id. at *4 (quoting Fid. & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1163 (4th Cir. 1983). A breach of contract occurs when a party to the contract fails "to perform any promise that forms the whole or part of a contract." 23 Williston on Contracts § 63:1 (4th ed.).

Here, based on the undisputed facts, the Individual Indemnitors clearly breached the Indemnity Agreement between the parties. It is undisputed that plaintiff entered into the Indemnity Agreement with Mr. and Mrs. Brown as Individual Indemnitors. (ECF No. 48-1 ¶ 1-2). It is undisputed that plaintiff paid out on the Bonds, based upon Local 45 and Boilermaker-Blacksmith's substantiated claims. (ECF Nos. 48-1 ¶ 1-2, 51). It is further undisputed that the amount due to Local 45 and to Boilermaker-Blacksmith exceeded the $150,000 total amount of

---

[2] The court considers only whether plaintiff is entitled to summary judgment as to Mr. and Mrs. Brown, the "Individual Indemnitors."

the Bonds. (ECF No. 51-1 at 4). The Indemnity Agreement, by its express terms, requires the Individual Indemnitors to indemnify plaintiff for any losses. (ECF No. 48-6 ⁋ 3). The Individual Indemnitors failed to indemnify plaintiff. As a result, plaintiff incurred losses in the amount of $150,000 on the Bonds and $18,224.50 in attorneys' fees and costs. (ECF 48-1 at 5).

The Individual Indemnitors, however, contend that plaintiff is not entitled to recover its losses, and that summary judgment is inappropriate because there exist genuine disputes of material fact. (ECF No. 51 ⁋ 6). The Individual Indemnitors argue that plaintiff failed to comply with the terms of the Indemnity Agreement by paying out on the claims without exercising "due diligence" to verify the claims. (Id. ⁋⁋ 6-9) Specifically, the Individual Indemnitors argue that (1) the amount due and owing to Local 45 was, at all times relevant to this case, in dispute, and therefore, plaintiff should not have paid $75,000 to Local 45, and (2) plaintiff should not have paid $75,000 to any entity other than Local 45. (Id.)

The parties disagree on the standard applicable to the court's determination of whether plaintiff's payment of the Bonds was appropriate, and therefore, whether plaintiff is entitled to indemnification. The Individual Indemnitors suggest that the Indemnity Agreement requires plaintiff to exercise "due diligence prior to issuance" of the two Bonds but do not cite to anything in the Indemnity Agreement to support that argument.[3] (Id.) Plaintiff replies that the Indemnity Agreement provides that a "sworn statement by an employee of the company, or other evidence of Loss, shall be prima facie evidence of the propriety, amount, and existence of Indemnitors' liability." (ECF Nos. 48-1 at 2; 48-6 ⁋ 3). In doing so, plaintiff suggests that the sworn statement of plaintiff's primary claims handler, Joshua Pantesco, "attesting to the payments by the Surety of the amounts of loss payments in question, and describing the method by which those claims were

[3] The court notes that the Individual Indemnitors' Response is a four-page document containing legal support only for the standard on a Motion for Summary Judgment and little other detail. (ECF No. 51).

investigated and adjusted," is prima facie evidence, which entitles plaintiff to judgment in its favor. (ECF No. 53 at 6-7).

Although the Indemnity Agreement contains no explicit "good faith" or "reasonableness" requirement, the Maryland Court of Appeals has recognized an implied standard of reasonableness. In <u>Atlantic Contracting & Material Co., Inc., v. Ulico Casualty Co.</u>, the Court noted that "a standard of reasonableness [ ] should be implied in the good faith analysis of a surety's actions in determining whether it may recover against the principal." 844 A.2d 460, 473 (Md. 2004). This case is particularly instructive here. In this case, the Maryland Court of Appeals was asked to determine whether a surety, Ulico Casualty Co. ("Ulico"), was entitled to indemnification when the principal, Atlantic Contract & Material Co., Inc. ("Atlantic"), failed to indemnify Ulico for a payment made under the bond. <u>Id.</u> at 463-64. Clearwater, which provided the repairs to Atlantic's equipment, submitted a claim to Ulico, stating that Atlantic had not paid for equipment repairs and requesting payment under the bond. <u>Id.</u> at 465. Ulico contacted John Madden, the President of Atlantic, seeking any documentation or information suggesting that the claim should not be paid. <u>Id.</u> Mr. Madden responded that a partial payment had been made and the remaining amount was in dispute. <u>Id.</u> at 465. Ulico requested further information from Mr. Madden regarding the nature of the dispute, in an attempt to determine whether a defense existed to prevent payment under the bond, but received no response. <u>Id.</u> at 466. Ulico paid Clearwater in the amount of its claim and sought indemnification from Atlantic. <u>Id.</u> Atlantic argued that Ulico was not entitled to indemnification under the agreement because the bond did not cover the claim. <u>Id.</u> Ulico responded that it had made the payment in good faith and, therefore, was entitled to reimbursement even if the claim was not covered by the bond. <u>Id.</u> at 467.

The Court reasoned that where the right to settle a claim against the principal is left to the sole discretion of the surety, the parties "must reasonably expect that compromise and payment will be made only after a reasonable investigation of the claims, counterclaims, and defenses asserted in the underlying action." Id. at 473 (internal quotation omitted). The Court identified a number of factors "to be considered in determining whether a surety made a reasonable, good faith settlement under the terms of the bond and the indemnity agreement" including: (1) the obligations of the surety as provided by the terms and coverage of the bond, (2) whether the principal has made more than generalized demands that the surety deny the claim, (3) the cooperation, or lack thereof, by the principal, in dealing with the surety, and (4) the thoroughness of the investigation performed by the surety. Id. at 474. The Court held that where a surety "unreasonably pays for an obligee's work that is not covered under a payment bond, then the surety should not be entitled to indemnification from the principal." Id. at 475. On the other hand, where the indemnitor fails to "inform the surety in a timely fashion of its contention, or supporting facts, that the bond did not cover" the claim, and the claim was supported with documentary evidence, the surety acts reasonably in paying out the claim. Id. at 475 (holding that the surety acted reasonably in paying the claim based upon the lack of response or defense put forth by the principal).

Here, based upon an analysis of the above factors, the court concludes that plaintiff acted reasonably in paying out the claims given that Local 45 and Boilermaker-Blacksmith supported their claims with documentary evidence and the Individual Indemnitors failed to articulate any viable defense, or produce any evidence, that the claims should not have been paid. As to the first factor, "an indemnity agreement is to be construed in conjunction with the bond upon which it is based," in determining what obligations plaintiff owed to the Individual Indemnitors. Id. Reading the bond and the Indemnity Agreement together, plaintiff was obligated to bind itself to the

11

beneficiaries of the bond (i.e., Local 45 and the various funds referenced in East Coast's collective bargaining agreement), for the total amount of $150,000. Where plaintiff determined, "in its sole discretion," however, that payment of the claim "was necessary or expedient," plaintiff was entitled to "immediate reimbursement for any and all Loss incurred." (ECF Nos. 48-5, 48-6 ¶ 4). Plaintiff, therefore, had an obligation to pay a claim only where it could be reasonably believed that such a payment was "necessary" or "expedient." (Id.)

As to the second factor, at the time the claims were made, the Individual Indemnitors made only a general, legally insufficient argument that the claims should not be paid. The Individual Indemnitors' initial response to plaintiff's notice of the claims failed to identify any reason why plaintiff should not make the payments to Local 45 or Boilermaker-Blacksmith. (ECF No. 48-1 ¶ 6). Instead, the Individual Indemnitors responded that the amount due, although more than the $150,000 total of the bonds, was in dispute. (ECF No. 51 ¶¶ 10, 12). To that end, the Individual Indemnitors suggest that plaintiff should not have paid out the claims while the parties were engaged in negotiations to determine the amount owed or set up a payment plan. (Id.) To the contrary, plaintiff was under no obligation to delay payment to Local 45 because the indemnitors were engaged in negotiations with the various funds. Plaintiff could only refuse to pay Local 45's claim based on information given to it by the Individual Indemnitors and amounting to a defense against payment. With regard to the claim made by Boilermaker-Blacksmith, the Individual Indemnitors now contend that the claim should not have been paid because Boilermaker-Blacksmith is not covered by the Bond. The Individual Indemnitors offer no support for this argument.[4] Even if Boilermaker-Blacksmith's claim was not covered by the Bond, however, the

---

[4] The Boilermaker-Blacksmith claim was made by various funds to which East Coast owed an obligation under the collective bargaining agreement between East Coast and Local 45, and which were covered by the Bond. The bond instrument identifies, by reference to the Ohio Valley Articles of Agreement between East Coast and Local 45, various funds entitled to the protection of the surety bond, including "union dues, health and welfare contributions, pension

Individual Indemnitors failed to present this defense prior to plaintiff making the payment. As to the third factor, the court accepts the Individual Indemnitors' assertion that they cooperated with plaintiff by discussing the efforts taken to negotiate the claims filed against the Bonds. That cooperation, however, fell sort of producing a defense upon which plaintiff could rely in denying payment to Local 45 or Boilermaker-Blacksmith. In fact, Mr. Brown conceded that the amount owed totaled $180,000 to Local 45 and Boilermaker-Blacksmith. (ECF No. 48-9 ¶ 5). The Individual Indemnitors have not raised a genuine dispute as to this point.

As to the fourth factor, the undisputed facts in the record evidence a thorough investigation on the part of plaintiff. Plaintiff promptly notified the Individual Indemnitors of the claims made by Local 45 and Boilermaker-Blacksmith, including the evidence submitted with each claim demonstrating the amounts due. (Id. ¶ 3-4). Plaintiff requested that the Individual Indemnitors "evaluate the claims being made and provide written responses regarding the validity of the claims, any amount actually due and a statement of any relevant defenses or set-offs." (Id.) Plaintiff's claims counsel, Mr. Pantesco, spoke with Mr. Brown on the phone to discuss the claims and any possible defenses, followed by a letter confirming that call and requesting, again, any evidence of set-offs or defenses against the claims. (Id. ¶ 5). The repeated correspondence from plaintiff seeking documentary evidence of a defense clearly demonstrates plaintiff's diligence in investigating the claims prior to payment. The Individual Indemnitors did not present any evidence, then or now, so as to create a genuine dispute of this fact.

---

plan contributions, apprenticeship training program contributions, National Annuity Trust contributions, and other applicable fringe contribution deductions." (ECF No. 48-4). The claim identified as the "Boilermaker-Blacksmith National Pension Trust" claim, requested payment to these same funds, including the National Pension Trust, the National Health & Welfare Fund, the National Annuity Trust, Apprenticeship Program; and the Mobilization, Optimization, Stabilization and Training ("MOST") [P]rogram." (ECF No. 48-8). These funds clearly fall within the enumerated list included in the Bond, to which payment is made mandatory by the terms of East Coast's collective bargaining agreement, and for which East Coast must carry a surety bond in the amount of $75,000.

In sum, based on the information available to plaintiff at the time the payments were made, the court concludes that plaintiff acted diligently and reasonably in making the payments to Local 45 and Boilermaker-Blacksmith. The Individual Indemnitors failed to articulate any defense to payment of the claims at the claims were made, and have introduced no evidence in their Response to create a dispute as to any material fact relevant to the court's inquiry. Accordingly, the court concludes that the Individual Indemnitors breached the Indemnity Agreement, and, therefore, plaintiff is entitled to judgment as a matter of law.

## V. ATTORNEYS' FEES

Plaintiff seeks attorneys' fees in the amount of $18,224.50, pursuant to the parties' Indemnity Agreement, which states, in relevant part: "Indemnitors shall exonerate, indemnify and save [plaintiff] harmless from and against all Loss." (ECF Nos. 48-1 at 6, 48-6 ¶ 3). The Indemnity Agreement defines "Loss" as "All loss and expense of any kind or nature, including attorneys' and other professional fees, which [plaintiff] incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of . . . enforcing by litigation or otherwise any of the provisions of this Agreement[.]" (ECF No. 48-6 ¶ 1). The Individual Indemnitors make no argument as to the propriety or reasonableness of the attorneys' fees.

The Indemnity Agreement between the parties entitles plaintiff to recover "all" attorneys' fees. (Id.) "Indemnity agreements of this kind are interpreted generally to entitle the surety to recover fees, costs, and expenses incurred in enforcing them." Atl. Contracting, 844 A.2d at 478. The court, however, must "examine the fee request for reasonableness, even in the absence of a contractual term specifying that the fees be reasonable." Id. (citing Rauch v. McCall, 761 A.2d 76, 84 (Md. Ct. Spec. App. 2000)). "Maryland law limits attorney[s'] fees to the reasonable fees actually incurred, regardless of a contractual provision to the contrary." Wells Fargo Bank, N.A.

v. Global Research Servs., LLC, No. RWT-12-3785, 2015 WL 302828 at *1 (D. Md. Jan. 22, 2015) (citing SunTrust Bank v. Goldman, 29 A.3d 724, 730 (Md. Ct. Spec. App. 2011)); see Synergics Energy Servs., LLC v. Algonquin Power Fund, Inc., (Am.), Inc., No. ELH-12-2257, 2014 WL 2812230 at 21 n.12 (D. Md. June 20, 2014) ("[E]ven in the absence of a contract term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness." (citation omitted)).  The party seeking to recover its fees must demonstrate that the fee request is reasonable.  Atl. Contracting, 844 A.2d at 478.  Where the right to recover fees sounds in contract, rather than a fee-shifting statute, the court applies Rule 19-301.5 of the Maryland Attorneys' Rules of Professional Conduct ("MARPC") to determine whether a fee is reasonable.  Id.  Rule 19-301.5 lists eight factors to be considered here, including:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the attorney or attorneys performing the services; and
> (8) whether the fee is fixed or contingent.

MARPC 19-301.5(a).  Similar to the "lodestar" factors, the court "should use the factors set forth in [Rule 19-301.5 of the MARPC ] as the foundation for analysis of what constitutes a reasonable fee when the court awards fees based on a contract entered by the parties."  Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton, 7 A.3d 1, 8 (Md. 2010).  Plaintiff provided several pages of entries detailing the time spent and costs incurred by counsel, which the court has reviewed.  (ECF

No. 48-18). Based upon a consideration of the relevant factors, the court concludes that plaintiff's requested fees and costs are reasonable.

First, this is a breach of contract case, which presents no novel or difficult questions of law or fact, but which requires a certain level of legal skill to perform properly. Plaintiff's counsel litigated this case for more than a year, from the filing of the Complaint through discovery and summary judgment. Plaintiff's counsel did an excellent job, in particular, in the preparation of its thorough Motion for Summary Judgment. The time and labor expended, 72.4 hours total, does not appear to be inflated given that the parties have reached the dispositive motions stage of the proceedings. (ECF No. 48-18). Second, the court does not believe it would be apparent to a client that this breach of contract case would preclude the attorney from taking on other matters.

Third, the fees charged fall within the "fee customarily charged in the locality for similar legal services." The hourly rate charged by plaintiff's counsel, set forth in plaintiff's filing (ECF No. 48-18), is as follows:

| | |
|---|---|
| Patrick M. Pike | $250.00 |
| Anthony J.M. Kikendall | $220.00 |
| Robert H. Kline | $220.00 |

In analyzing the reasonableness of these rates, the court references the ranges in Appendix B to this Court's Local Rules, which "detail[ ] the best practices for attorneys seeking fee awards from the Court." Ramirez v. 316 Charles, LLC, No. SAG-19-3252, 2021 WL 662185, at *2 (D. Md. Feb. 19, 2021). The rate for both Mr. Kikendall and Mr. Kline falls within the lowest range, for "Lawyers admitted to the bar for less than five years: $150-225." Loc. R. App'x B. Mr. Pike's hourly rate falls within the range for "Lawyers admitted to the bar for five to eight years: $165-300." Id. Although plaintiff does not provide how many years of experience each of its attorneys

have, the guidelines suggest that rates charged by plaintiff's counsel were reasonable. Indeed, the rate for Messrs. Kikendall and Kline would be appropriate for entry-level attorneys. As to Mr. Pike, the court notes that he is a named partner at the firm Pike & Gilliss, LLC, which indicates experience commensurate with the rate charged in this case, if not more.

As to the fourth factor, plaintiff's request is reasonable given "the time involved and the results obtained." The results obtained by plaintiff in its successful Motion for Summary Judgment reflect the entirety of the relief sought. Further, plaintiff's request is proportionate to the size of the award, particularly in light of the fact that plaintiff engaged in discovery, filed a dispositive motion, and produced supplemental briefing on East Coast's Suggestion of Bankruptcy. The fifth and sixth factors are not pertinent here as there does not appear to have been time limitations imposed by the client or the circumstances, and the nature and length of the professional relationship with the client does not seem to have impacted the litigation.

As to the seventh factor, "the experience, reputation, and ability" of the attorneys, the court notes that plaintiff's counsel demonstrated excellent ability in the preparation of its thorough and well-supported Motion.[5] The court also notes that plaintiff's costs, which total $574.23, and include the filing fee, subpoena fees, and service fees, are not inflated and appear reasonable. (ECF No. 48-18). In sum, the court concludes that plaintiff's fees and costs request is reasonable given the time spent litigating this case, the results achieved, and the experience of plaintiff's counsel. Accordingly, the court grants plaintiff the total requested amount of $18,224.50 in attorneys' fees and costs.

---

[5] As to the eighth factor, the court concludes that whether the fee was fixed or contingent has no significant bearing on the fee analysis in this case.

## VI. CONCLUSION

For the foregoing reasons, plaintiff's Motion for Summary Judgment (ECF No. 48) is GRANTED as to defendants Christopher Brown and Anita Brown. A separate order will be issued.


Date: December 2, 2022                   /s/
                                                                         Beth P. Gesner
                                                                         Chief United States Magistrate Judge